**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JUSTIN SHIPP; VINCENT TATE;**
**TERRENCE YAZEL, individually and on**
**behalf of others similarly situated,**                    **PLAINTIFFS**

**v.**                         **Case No. 5:23-CV-05215-TLB**

**CENTRAL STATES**
**MANUFACTURING, INC.; CENTRAL**
**STATES MANUFACTURING, INC.**
**BOARD OF DIRECTORS; GREATBANC**
**TRUST CO.; JAMES SLIKER; CHAD**
**WARE; THOMAS FERREE; MATT**
**KRAMER; TINA CHANG; MATTHEW**
**STITES,**                                     **DEFENDANTS**

## FIRST AMENDED COMPLAINT – CLASS ACTION

COME NOW the Plaintiffs Justin Shipp, Vincent Tate, and Terrence Yazel and for their Complaint on behalf of themselves and all others similarly situated against the Defendants Central States Manufacturing, Inc. ("Central States" or the "Company"), its Board of Directors, individuals James Sliker, Chad Ware, Thomas Ferree, Matt Kramer, Tina Chang, and Matthew Stites, and GreatBanc Trust Company, state and allege upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record:

### I.    INTRODUCTION

1.    Plaintiffs are participants in Central States's Employee Stock Ownership Plan (the "Plan" or "ESOP"), through which the Company provides retirement benefits. The ESOP provides retirement benefits by holding Company Stock in trust and allocating shares to the accounts of participants and beneficiaries. When participants retire or otherwise leave the Company, their shares are repurchased over the course of several years.

2.    At all relevant times, the ESOP owned 100% of the shares of Central States stock.

And yet, in December 2020, the fiduciaries who managed and administered the ESOP caused the ESOP to issue a $40 million promissory note to Central States in order to purchase from Central States, at the Company's behest, over 2.2 million additional shares of Central States stock, an amount equal to nearly a quarter of already outstanding shares. The ESOP's governing document permitted the allocation of the newly acquired shares to participants' accounts only as principal was repaid on the $40 million note over its 30-year term. The effect was to immediately dilute the value of all existing shares allocated to participants' accounts, benefiting the Company by immediately and significantly reducing its stock repurchase obligations, to the detriment of ESOP participants and beneficiaries.

3.      This transaction further harmed the ESOP and its participants and beneficiaries because, by failing to account for the dilution in per-share value caused by the issuance of 2.2 million additional shares, the fiduciaries caused the ESOP to overpay for the shares it purchased and thus to unnecessarily incur more debt than would have been required to execute the transaction had the shares been fairly valued.

4.      Defendants, all of whom were ESOP fiduciaries who had a hand in the dilutive transaction, owed and breached fiduciary duties toward the Plaintiffs and others similarly situated. Plaintiffs seek appropriate monetary and equitable remedies.

## II.      PARTIES

### A.      Plaintiffs

5.      The named Plaintiffs and the proposed Class Members are all participants in or beneficiaries of the Central States Manufacturing, Inc. ESOP, a retirement plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA") under ERISA § 3(2), 29 U.S.C. § 1002(2). There are more than 700 total ESOP participants or beneficiaries.

6.      Plaintiff Justin Shipp is an individual residing in Fayetteville, Arkansas, who was

an employee of Central States until 2018 and a participant at all relevant times in the Central States ESOP.

7.      Plaintiff Vincent Tate is an individual residing in Rogers, Arkansas, who was an employee of Central States until 2022 and a participant in the ESOP at all relevant times.

8.      Plaintiff Terrence Yazel is an individual residing in Bella Vista, Arkansas, who was an employee of Central States until 2018 and a participant in the ESOP at all relevant times.

**B.      Defendants**

9.      Defendant Central States Manufacturing, Inc. is an Arkansas corporation with its principal place of business in Tontitown, Arkansas. Central States is the plan sponsor of the Central States ESOP under ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). It is also the plan "administrator" under ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and therefore an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).[1]

10.      Defendant Central States Manufacturing Board of Directors (the "Board") directed, oversaw, authorized, and otherwise controlled the actions of Defendant Central States, including in its capacity as the ESOP plan administrator. The Board was assigned and exercised the authority to appoint, *inter alia*, the Plan's Trustee,[2] and therefore it bore a corresponding duty to monitor the Trustee's actions and is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *Martin v. Feilen*, 965 F.2d 660, 670–71 (8th Cir. 1992); 29 C.F.R. § 2509.75–8. The Board also exercised actual control over significant decisions involving the ESOP, especially by directing or approving the transactions and fiduciary decisions challenged herein, and for this additional reason is a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

---

[1] Exh. A, Central States Manufacturing Employee Stock Ownership Plan as amended and restated effective January 1, 2015 ("The 2015 Plan Document") at § 18.3.

[2] *Id*. at § 2.60.

11.    Defendant James Sliker is an individual residing in Bentonville, Arkansas, who, at all relevant times, was Central States's Chief Executive Officer and a member of the Board; he participated in conceiving, proposing, and authorizing the transactions and fiduciary decisions discussed herein. Defendant Sliker was therefore a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

12.    Defendant Chad Ware is an individual residing in Bentonville, Arkansas, who, at all relevant times, was Central States's Chief Financial Officer; he participated in conceiving, proposing, and authorizing the transactions and fiduciary decisions discussed herein, and was therefore an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

13.    Defendant Thomas Ferree is an individual residing in Solon, Iowa, who, at all relevant times, served on Central States's Board as the Chair of the Audit and Governance Committee, exercised or participated in exercising the Board's fiduciary powers, and was an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), for the purposes of the transactions and fiduciary decisions discussed herein.

14.    Defendant Matt Kramer is an individual residing in Dallas, Texas, who, at all relevant times, served on Central States's Board as its Chair; he exercised or participated in exercising the Board's fiduciary powers, and was an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), for the purposes of the transactions and fiduciary decisions discussed herein.

15.    Defendant Tina Chang is an individual residing in Brookfield, Wisconsin, who, at all relevant times, served on Central States's Board; she exercised or participated in exercising the Board's fiduciary powers, and was an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), for the purposes of the transactions and fiduciary decisions discussed herein.

16.     Defendant Matthew Stites is an individual residing in Knoxville, Tennessee, who, at all relevant times, served on Central States's Board; he exercised or participated in exercising the Board's fiduciary powers, and was an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), for the purposes of the transactions and fiduciary decisions discussed herein.

17.     Defendant GreatBanc Trust Company ("GreatBanc") is an Illinois corporation with its principal place of business in Lisle, Illinois. GreatBanc is engaged in the business, *inter alia*, of serving as a Trustee for employee stock ownership plans. GreatBanc served as Trustee for the Central States ESOP with respect to the transactions hereinafter set forth and was an ERISA fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

### III.     JURISDICTION AND VENUE

18.     ERISA provides that a plan participant or beneficiary has standing to bring a civil action under ERISA § 502, 29 U.S.C. § 1132. A person is a plan participant when that person "is or may become eligible to receive a benefit of any type from an employee benefit plan." ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiffs are or may become eligible to receive benefits under the ESOP.

19.     Plaintiffs bring this action in a representative capacity as plan participants under 29 U.S.C. § 1132(a) on behalf of the ESOP and on behalf of the class of plan participants and beneficiaries.

20.     Plaintiffs seek to remedy the impacts of the Defendant-fiduciaries' breaches of fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104, and non-exempt prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106.

21.     Plaintiffs seek to recover appropriate monetary relief for the ESOP under sections 502(a)(2) and 409(a) of ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109(a), including, without limitation, restoration to the ESOP of any losses resulting from each breach of fiduciary duty and

each prohibited transaction. Plaintiffs further seek to obtain appropriate equitable relief under 29 U.S.C. § 1109(a) and 29 U.S.C. § 1132(a)(3), including without limitation the remedies of surcharge and recission.

22.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and Section 502 of ERISA, 29 U.S.C. § 1132(e).

23.     Venue in this district is proper under 28 U.S.C. § 1391(b) and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) because Defendant Central States is located within the judicial district and the ESOP has been administered within the district. Venue is proper in this Division under 28 U.S.C. § 83(b).

## IV.    FACTUAL BACKGROUND

### A.    History of the Central States ESOP

24.     Central States is a metal roofing and siding company. It produces roofing and siding for a range of purposes, including residential, agricultural, and commercial uses, and it fabricates self-storage building packages. Founded in Rogers, Arkansas, in April 1988, Central States rapidly expanded over the following decades and now operates 11 manufacturing and retail locations throughout the eastern half of the United States.

25.     Central States stock is not publicly traded. Instead, it is and at all relevant times has been wholly owned by the ESOP. The Company established the ESOP in 1991 to provide retirement benefits for its employees. The ESOP is a stock bonus plan under Section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a), and is an employee stock ownership plan as defined by ERISA.

### B.    The ESOP's Allocation of Stock to Employees

26.     The Plan's governing documents have been restated and amended over time—most notably in 2001 and 2015. Now and at the time of the transactions at issue, the ESOP's main

governing document was the "Central States Manufacturing, Inc. Employee Stock Ownership Plan, as amended and restated effective January 1, 2015" (the "2015 Plan Document"). The 2015 Plan Document was occasioned by Central States's election of S corporation status in 2012. The 2015 Plan has been amended multiple times since.

27.    The Plan's purpose is to provide retirement benefits for its participants and beneficiaries; it allocates Company Stock among Central States's employees and maintains a structure by which to hold that stock in trust. To accomplish this, the Company has made annual contributions to an ESOP trust in the form of cash or stock.[3] The manner and amount of the annual contribution is determined by Central States's Board of Directors.[4]

28.    The 2015 Plan Document further provides that in addition to receiving stock contributed by the Company, the Plan may use funds contributed by the Company or funds it borrows in order to purchase stock from the Company at a fair market price, determined based on a third-party appraisal.[5] Stock the Plan acquires through a leveraged purchase is held in a "suspense account" and is allocated to Plan participants over the term of the loan as principal is repaid.[6] While the Plan Document authorizes the Plan to purchase stock in this manner, fiduciaries acting on behalf of the Plan must decide whether to do so in any particular instance.

29.    In general, employees automatically become Plan participants when they begin work for the Company.[7]

---

[3] *Id.* at §§ 5.1–5.2.

[4] *Id.* at §§ 5.1–5.2.

[5] *Id.* at § 6.3.

[6] *Id.* at § 6.2(a)–(c).

[7] *Id.* at §§ 2.23, 3.1.

30.    Allocations to Plan participants occur annually as of each December 31.[8] Any Plan participant who has worked 1,000 or more hours in the previous year is entitled to an allocation.[9] Allocations may be contributed directly by the Company or be sourced from the ESOP's suspense account; in either event, they are allocated to participants' Company Stock Accounts.[10]

31.    The Company's annual contribution is allocated among Plan participants based on their respective compensation. Allocation occurs in amounts calculated as the ratio of the individual's "covered compensation"—the total of the individual's wages, salaries, fees, and other amounts received as a part of their employment with the Company for a given year—to the aggregate covered compensation of all Plan participants in that year.[11] Under the 2015 Plan Document, covered compensation could not exceed $260,000, subject to annual cost of living adjustments.[12] Thus, up to that cap, higher earning employees of the Company receive proportionally higher ESOP allocations.

32.    At all relevant times the Plan has provided, subject to some exceptions, that when an individual retires or otherwise terminates employment with the Company, the Company or the Trustee is required to purchase shares that had been allocated to his or her Plan account at a fair market value in installments over five years.[13] This "Repurchase Obligation" constitutes a liability of the Company.

---

[8] *Id.* at §§ 2.6, 4.1, 6.2(c), 7.1, 7.4.

[9] *Id.* at § 7.1.

[10] *Id.* at § 7.3.

[11] *Id.* at §§ 2.16, 6.2(c), 7.4.

[12] *Id.* at §§ 2.16.

[13] *Id.* at §§ 2.4, 15.1, 16.2.

C.    **Structure of ESOP Administration**

33.    At all relevant times, the Company, the Company's Board of Directors, the directors themselves, and the Trustee selected by the Board all had fiduciary responsibilities with regard to the ESOP.

34.    The 2015 Plan Document designated Central States as the plan's "administrator" within the meaning of ERISA § 3(16), 29 U.S.C. § 1002(16).[14]

35.    Central States's Board of Directors serves at least two important fiduciary roles. First, per the 2015 Plan Document, it appoints and monitors the Trustee.[15] Second, as a matter of practice, it has exercised the Company's fiduciary responsibilities by initiating, directing, and/or approving some ESOP administrative actions, including the actions at issue, and by managing the ESOP.

36.    The Trustee's powers at the times of the transactions at issue herein are described in the 2015 Plan Document and were also specified in a Trust Agreement made effective August 31, 2020 (the "Trust Agreement").[16]

37.    The Trust Agreement conferred on the Trustee "sole discretion" over a broad range of decisions.[17] Among them,

> in its sole discretion, the Trustee shall have (A) full and complete investment authority and responsibility with respect to the purchase, retention, sale and pledge of Company Stock; and (B) complete authority to contract or otherwise enter into transactions for the purpose of acquiring or selling Company Stock, including transactions with the Employer or any shareholders of the Employer, and to borrow money from any lender (including the Employer or any shareholder of the Employer) to finance the acquisition of Company Stock with one or more

---

[14] *Id*. at §§ 2.13, 18.3.

[15] *Id*. at § 2.60.

[16] Exh. B, Central States Manufacturing, Inc. ESOP Trust Agreement, effective August 31, 2020 ("2020 Trust Agreement").

[17] *Id*. at §§ 5.1(a)(i), 5.3.

Acquisition Loans.[18]

**D.    The Transactions at Issue**

38.    The Defendants' liability in this case arises from transactions consummated on and around December 2, 2020.

39.    Earlier in the year, on August 31, 2020, the Company had purchased and redeemed 2,222,222.22 shares from accounts of "inactive participants," at a share price of $18 per share and a total cost of $40 million.[19] Inactive participants are those who have ceased to be eligible for further allocation because, for instance, they retired or terminated employment with the Company, but whose account balances have not yet been completely distributed to them or to a beneficiary.[20] The Company financed the $40 million it paid inactive participants in whole or in part through a loan from a third-party lender.

40.    On or around December 2, 2020, the ESOP, despite the fact that it already owned 100% of Central States's outstanding stock, purchased from the Company an additional 2,222,222.22 shares of Company Stock at a per-share price of $18.00, for a total price of $40 million. To pay for these shares, the ESOP issued a $40 million promissory note to the Company, with a term of 30 years.[21] The ESOP's purchase of these additional shares of Company Stock and its borrowing of funds from the Company to do so are collectively referred to herein as the "Subject Transactions."

41.    While Central States's August 2020 purchase and redemption of shares from inactive participants and the ESOP's December 2020 purchase of a like number of shares may

---

[18] *Id*. at § 5.1(a)(i).

[19] Exh. C, Amendment 2020-1 to the Central States Manufacturing, Inc. Employee Stock Ownership Plan.

[20] Exh. A at §§ 2.29, 4.1, 4.7, 4.8.

[21] Exh. D, December 2, 2020 Opinion Letter from Stout Risius Ross, LLC to GreatBanc Trust Company.

superficially seem to have had an offsetting effect on the value of the other shares held by the ESOP and allocated to participants, that is not the case at all. The August 2020 redemption had a net neutral impact on the price of each share of Central States stock because the Company's assets (and therefore the Company's total value) were reduced by the $40 million, but the outstanding number of shares was reduced correspondingly; therefore, the per-share value of the remaining outstanding shares was unchanged.

42.    In contrast, the December transactions were highly dilutive. While 2,222,222.22 shares were issued, there was no corresponding increase in the Company's assets or value.  As a result, the unchanged value of the Company was now divided among nearly 25 percent more shares, resulting in a lower per-share value, including for the shares that had been outstanding prior to the December transactions, all of which were owned by the ESOP and allocated to existing participants' accounts.

43.    Moreover, because the 2,222,222.22 shares were purchased using a promissory note with a 30-year term, the dilutive effect was not offset by the immediate allocation of these additional shares to ESOP participants. Instead, the ESOP was required to hold those shares in a suspense account and allocate them to participant accounts only as principal was retired on the promissory note over its 30-year term. The result was an immediate and substantial dilution of share value that harmed the ESOP and its participants and beneficiaries.

44.    The ESOP also paid more than fair market value for the additional shares it purchased in the December transactions. The $18.00 per share paid by the ESOP in the December transactions was the same price per share as had been paid to inactive participants in August, 2020. Yet the Company's assets had been depleted by the $40 million paid in the August transactions. And through the December transactions, that depleted Company value was to be divided among

2,222,222.22 additional shares. By failing to adequately account for this substantial depletion in the Company's assets and value (and the resulting dilution in share price), Defendants caused the ESOP to significantly overpay for the 2,222,222.22 shares it acquired in the Subject Transactions. And because the ESOP issued a promissory note to pay for these 2,222,222.22 shares, the inflated share price also caused the ESOP to incur more debt than would have been required had the shares been valued properly.

45.     On information and belief, the decision to engage in the Subject Transactions was made by Central States's executives, including Defendants Sliker and Ware; was ratified by the Board through its members; and was executed in concert with, and with the approval of, GreatBanc, which, as the Trustee, had the authority to decide whether the ESOP should enter into the Subject transactions and the authority to prevent the ESOP from engaging in any transaction that: (a) diluted the value of shares, and thus reduced the value of participants' accounts; (b) caused the ESOP to overpay for shares; and/or (c) caused the ESOP to incur unnecessary debt.

46.     The Company executives and Board members who planned and approved the Subject Transactions were aware of their dilutive effect. Their knowledge of the dilutive effect is evidenced in part by the fact that in the years leading up to the Subject Transactions, they protected their own interests by modifying their stock appreciation rights to counteract the dilutive effects of releveraging transactions.

47.     By engaging in the Subject Transactions, the Defendants improperly placed the interests of the Company above and against the interests of the Plan participants and the ESOP. This is because while the dilution harmed ESOP participants, it benefited the Company: any dilution of the price of Company shares reduced the Company's Repurchase Obligations. Indeed, on information and belief, this reduction in the Company's Repurchase Obligation was a primary

12

goal of the Defendants. The effect of the Subject Transactions was to reduce the Company's Repurchase Obligations by offloading a significant portion of those obligations to Plan participants through a reduction in their already accrued retirement benefits.

48.     The disastrous dilution was not justified by any permissible fiduciary consideration. Defendant-fiduciaries knew or should have known that the dilution would be immediate for all Plan participants and that the newly acquired shares could not be immediately allocated to those participants to counteract the dilution; indeed, allocation of the newly acquired shares to participants could occur only incrementally over a period of 30 years. In other words, Defendants ensured that the substantial harm to all participants would be locked in on December 2, 2020. And Defendants' use of a leveraged transaction ensured that the harm to participants would not be offset by allocation of the newly acquired shares. The result was a substantial reduction in the Company's future repurchase obligations at the direct expense of Plan participants.

49.     Defendants cannot justify their actions by pursuing an objective desired by Central States. ERISA's duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants, 29 U.S.C. § 1104(a), i.e., those who are the participants in the Plan at the time of the Subject Transactions whose accounts had been allocated shares diluted by the Subject Transactions. ERISA does not permit fiduciaries to act in the interests of non-participants, including the plan sponsor.

50.     Further, Defendants failed, on information and belief, to give due consideration to any alternative that would have resulted in significantly less and perhaps no dilution of the value of existing participants' shares. Such alternatives might have included, among other things, having the ESOP itself purchase shares from the inactive participants and then immediately reallocating them to participants, thereby reducing or eliminating the dilutive impact.

51.     Defendants also failed to give due consideration to having the Company make contributions to the ESOP of a relatively small number of shares each year, which would have eliminated the immediate and dramatic dilution of value to all participant accounts while still providing additional shares for allocation to participants on an ongoing basis. And in that scenario, the small number of shares contributed each year would be allocated immediately among then-current participants, greatly (and perhaps entirely) offsetting any dilution of value.

52.     Ultimately, by choosing a course of action that benefited the Company (including by dramatically reducing its Repurchase Obligations) and harmed participants (by immediately locking in substantial dilutions in share value without an offsetting allocation of new shares) and the ESOP (by causing the ESOP to overpay for the shares and incur unnecessary debt), Defendants breached their ERISA fiduciary duties of loyalty and prudence. And because they acted without properly considering whether there existed any other viable alternatives that would have minimized any harm to participants and the ESOP, Defendants failed to engage in a prudent decision-making process that ERISA requires of all fiduciaries. And the non-GreatBanc defendants further violated their obligations under ERISA not to self-deal or represent a party—the Company—whose interests were adverse to those of the ESOP participants in a transaction involving Plan assets.

## V.    CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this action as a class action under Rule 23(b)(1) or, alternatively, (b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed class (the "Class"):

> All participants and beneficiaries of the Central States Manufacturing, Inc.
> Employee Stock Ownership Plan, excluding Defendants.

54.     **Numerosity and Ascertainability:** The number of Class Members is so numerous

that joinder of all Class Members is impracticable. Plaintiffs do not know the exact size of the Class or the identities of the Class Members but, upon information and belief, allege that there are more than 700 participants and beneficiaries of the Central States ESOP who have been harmed by Defendants' conduct as alleged herein. The Class Members will be readily identified from Defendants' records.

55.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

- whether, by causing the ESOP to engage in the Subject Transactions, Defendants put the interests of Central States ahead of the interests of ESOP participants and beneficiaries;

- whether, in deciding to have the ESOP engage in the Subject Transactions, Defendants' failed to adequately consider and evaluate alternatives;

- whether the Subject Transactions diluted the value of Central States stock allocated to the accounts of ESOP participants and beneficiaries;

- whether the ESOP overpaid for the shares it purchased in the Subject Transactions and, as a result, incurred unnecessary debt;

- whether Defendants' alleged conduct violated § 404 of ERISA, 29 U.S.C. § 1104;

- whether Defendants' alleged conduct violated § 406 of ERISA, 29 U.S.C. § 1106;

- whether the ESOP is entitled to recover its losses and/or whether Plaintiffs and Class Members are entitled to monetary and/or equitable remedies.

56.     **Typicality**: Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' misconduct. Plaintiffs

are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to any Plaintiff. The claims of Plaintiffs and Class Members arise from the same operative facts and are based on the same legal theories.

57.     **Adequacy**: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation and in litigating ERISA cases, including those involving ESOPs; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

58.     **Rule 23(b)(1)**: This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, *inter alia*, whether Defendants are liable for losses to the ESOP, how any such losses should be allocated among Class Members' accounts, and whether Class Members are entitled to equitable relief, including surcharge.

59.     **Rule 23(b)(3)**: In the alternative, this action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered

in the management of this class action. The damages and other detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. Such an outcome is especially present here because Plaintiffs, on behalf of the Class, plead claims in their representative capacity on behalf of the ESOP itself. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.    CLAIMS

### FIRST CLAIM FOR RELIEF

VIOLATION OF § 404 OF ERISA, 29 U.S.C. § 1104

60.    Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

61.    Pursuant to Section 404(a) of ERISA, 29 U.S.C. § 1104(a), a fiduciary with respect to a qualified retirement plan is required to discharge his duties solely in the interests of the participants and beneficiaries of the plan and for the exclusive purpose of providing benefits to participants and beneficiaries, with the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use for the conduct of an enterprise of a like character and with like aims.

62.    At all relevant times, Defendants Central States, the Board, GreatBanc, Sliker, Ware, Ferree, Kramer, Chang, and Stites had and/or exercised discretionary authority over the

17

structuring, approval, and execution of the Subject Transactions. This constituted the exercise of discretionary control or authority over the management of the ESOP, the exercise of control or authority over ESOP assets, and the discretionary authority or responsibility in the administration of the ESOP, and thus Defendants were acting as fiduciaries in the Subject Transactions within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

63.    Each of these fiduciaries breached their duties to the Plan participants and beneficiaries under ERISA § 404(a)(1)(A) and (a)(1)(B), 29 U.S.C. § 1104(a)(1)(A) and (a)(1)(B).

64.    Defendants Central States, the Board, Sliker, Ware, Ferree, Kramer, Chang, and Stites breached their fiduciary duties to plan participants and beneficiaries by failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims with respect to the Subject Transactions, and by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries with respect to the Subject Transactions in at least the following respects:

A.    By failing to adequately consider and review the impact of the Subject Transactions on the per-share value of Central States stock held by the ESOP and allocated to participant accounts;

B.    By failing to adequately consider and review the price paid by the ESOP for the shares it acquired in the Subject Transactions and the resulting debt it incurred;

C.    By failing to duly consider alternatives to the Subject Transactions, such as share recycling, dividends, annual cash contributions, or annual stock contributions, that would have avoided harming ESOP participants and

beneficiaries;

D.    By acting with the intent of reducing the Company's Repurchase Obligations and thereby placing the Company's interests over those of the Plan participants and beneficiaries and failing to act for the exclusive purpose of providing benefits to participants and beneficiaries;

E.    By approving the Subject Transactions despite their dilutive effect on the value of the Company shares held by the ESOP and allocated to the accounts of participants;

F.    By causing the ESOP to pay more than fair market value, and more than it should have, for the shares it acquired in the Subject Transactions; and

G.    By causing the ESOP to incur unnecessary debt due it its overpayment for shares in the Subject Transactions.

65.    Defendant the Board of Directors and Defendants Sliker, Ferree, Kramer, Chang, and Stites as members of the Board further breached their fiduciary duties in at least the following additional respects:

A.    By failing to adequately and prudently monitor the Trustee they appointed in order to ensure its adherence to ERISA's fiduciary duties to act with prudence and only in the interest of Plan benefits and participants;

B.    By failing to remove and replace the Trustee with a competent and independent fiduciary that would properly perform its ERISA fiduciary duties regarding the Subject Transactions.

66.    Defendant GreatBanc breached its fiduciary duty by failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims with respect to the Subject Transactions, and by failing to discharge its duties with respect to the plan solely in the interest of the participants and beneficiaries with respect to the Subject Transactions, in at least the following respects:

A. By failing to adequately consider and evaluate the impact of the Subject Transactions on the value of the Central States stock allocated to participants' accounts;

B. By failing to adequately consider and review the price paid by the ESOP for the shares it acquired in the Subject Transactions and the resulting debt it incurred;

C. By failing to adequately consider and evaluate alternatives to the Subject Transactions, such as share recycling, that would have avoided harming ESOP participants and beneficiaries;

D. By placing the Company's fiscal interests over those of the Plan participants and beneficiaries;

E. By approving the Subject Transactions despite their dilutive effects on the Company's shares held by the ESOP and allocated to participants' accounts;

F. By causing the ESOP to pay more than fair market value, and more than it should have, for the shares it acquired in the Subject Transactions; and

G. By causing the ESOP to incur unnecessary debt due it its overpayment for shares in the Subject Transactions.

67. Pursuant to sections 502(a)(2) and 409 of ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109, Defendants are jointly and severally liable to make good to the ESOP any losses of the ESOP

resulting from each breach and to disgorge to the ESOP any and all profits generated from their wrongdoing.

68.    As the direct and proximate result of Defendants' breaches of fiduciary duty, the ESOP and its participants and beneficiaries have been damaged in an amount to be determined at or before trial.

69.    Pursuant to ERISA § 502(a)(2), and (3), 29 U.S.C. § 1132(a)(2) and (3), Plaintiffs may obtain appropriate equitable relief to redress Defendants' ERISA violations, including but not limited to injunctive relief, disgorgement, and surcharge.

## SECOND CLAIM FOR RELIEF

### PROHIBITED TRANSACTIONS
### UNDER § 406 OF ERISA, 29 U.S.C. § 1106

70.    Plaintiffs incorporate by reference the preceding allegations as if fully set forth herein.

71.    Under Section 406(b) of ERISA, 29 U.S.C. § 1106(b), fiduciaries may not deal with the assets of the plan in their own interest or for their own account and may not in any capacity act in a transaction involving the Plan on behalf of a party, or represent a party whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries.

72.    Because the Company had an interest in reducing its Repurchase Obligation by diluting the shares held by Plan participants and beneficiaries, its interests were adverse to those of the Plan.

73.    Acting through its officers and agents when engaging in the Subject Transactions, Central States—a plan fiduciary—dealt with Plan assets in its own interests and for its own account and thereby engaged in transactions prohibited by § 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1).

74.    Despite each being a Plan fiduciary, Central States's officers and agents—including

Defendants the Board, and individual executives and Board members Sliker, Ware, Ferree, Kramer, Chang, and Stites—each acted on behalf of or represented Central States in the Subject Transactions, in which the Company's interests were adverse to the interests of the Plan and its participants and beneficiaries. They thereby engaged in transactions prohibited by ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

75.    Pursuant to sections 502(a)(2) and 409 of ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109, Defendants are jointly and severally liable to make good to the ESOP any losses of the ESOP resulting from each breach and to disgorge to the ESOP any and all profits generated from their wrongdoing.

76.    As a direct and proximate result of Defendants' breaches of fiduciary duty, the ESOP and its participants and beneficiaries have been damaged in an amount to be determined at or before trial.

77.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a) (3), Plaintiffs may obtain appropriate equitable relief to redress Defendants' ERISA violations, including but not limited to injunctive relief, disgorgement, and surcharge.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, individually and on behalf of all other similarly situated, pray this Court:

A.    Determine this action be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives, and appoint Plaintiffs' counsel as Class Counsel;

B.    Grant judgment against the Defendants and hold them liable to restore to the ESOP, including participant accounts, all losses resulting from their

breaches of fiduciary duty and/or participation in a prohibited transaction

under ERISA, plus pre-judgment interest;

C.      Order each of the Defendants to disgorge and restore to the ESOP any

profits that have been generated as a result of their wrongful conduct;

D.      Order such equitable relief as may be appropriate, including but not limited

to injunctive relief, disgorgement, and surcharge; and

E.      Award Plaintiffs their reasonable attorneys' fees and expenses under the

common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other

applicable law.

DATE: March 12, 2024                        Respectfully submitted,

                                            */s/ Gary A. Gotto*
                                            Gary A. Gotto (*pro hac vice*)
                                            KELLER ROHRBACK, L.L.P.
                                            3101 N. Central Avenue, Suite 1400
                                            Phoenix, AZ 85012-2643
                                            (602) 230-6322 / fax (602) 248-2822
                                            Email: ggotto@kellerrorhback.com

                                            Matthew Gerend (*pro hac vice*)
                                            Eric Lombardo (*pro hac vice*)
                                            KELLER ROHRBACK, L.L.P.
                                            1201 Third Avenue, Suite 3200
                                            Seattle, WA 98101-3276
                                            (206) 623-1900 / fax (206) 623-3384
                                            Email: mgerend@kellerrohrback.com
                                            Email: elombardo@kellerrohrback.com

                                            Jeffrey Lewis (*pro hac vice* forthcoming)
                                            KELLER ROHRBACK L.L.P.
                                            180 Grand Avenue, Suite 1380
                                            Oakland, CA 94612
                                            (510) 463-3900 / fax (50) 463-3901
                                            E-mail: jlewis@kellerrohrback.com

                                            */s/ William T. Crowder*
                                            William T. Crowder (Ark. Bar No. 2003138)
                                            Thomas P. Thrash (Ark. Bar No. 80147)
                                            THRASH LAW FIRM, P.A.
                                            1101 Garland Street
                                            Little Rock, AR 72201-1214

(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

***Attorneys for Plaintiffs***