IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN SHIPP;
VINCENT TATE;
and TERRENCE YAZEL, individually
and on behalf of other similarly situated                                                  PLAINTIFFS

V.                                    CASE NO. 5:23-CV-5215

CENTRAL STATES MANUFACTURING, INC.;
CENTRAL STATES MANUFACTURING, INC.
BOARD OF DIRECTORS;
GREATBANC TRUST CO.; JAMES SLIKER;
CHAD WARE; THOMAS FERREE;
MATT KRAMER; TINA CHANG;
and MATTHEW STITES                                                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Now before the Court are two fully briefed motions. One is a Motion to Dismiss (Doc. 65) filed by Defendants Central States Manufacturing; Central States's Board of Directors; and the individual Directors serving on the Board of Central States at the time of the events in the Amended Complaint: James Sliker, Chad Ware, Thomas Ferree, Matt Kramer, Tina Chang, and Matthew Stites (collectively, "Central States Defendants"). The other is a Motion to Dismiss (Doc. 63) by separate Defendant GreatBanc Trust Company.

Plaintiffs Justin Shipp, Vincent Tate, and Terrence Yazel are former employees of Central States and participants and beneficiaries in Central States's Employee Stock Ownership Plan, which was managed by GreatBanc as Plan Trustee. Plaintiffs filed a Response in Opposition to each Motion to Dismiss. *See* Docs. 69 & 70. Then, both Defendants filed Replied in support of their Motions. *See* Docs. 72 & 73.

1

On June 17, 2024, the Court held a videoconference hearing during which the parties presented oral argument both for and against each Motion to Dismiss. The Court **DENIED** both Motions from the bench, advising the parties that a more fulsome written Order would follow. To the extent anything in this Order conflicts with what was stated from the bench, this Order will control.

## I.   BACKGROUND

### A.  The Parties

Central States Manufacturing is an Arkansas metal roofing and siding company headquartered in Tontitown (the "Company") . The Company was founded in 1988 and has grown substantially since then. It now operates eleven manufacturing and retailing stores across the eastern half of the United States. It is a closely-held, employee-owned Company, and its stock is not publicly traded. All Company stock is wholly owned by an Employee Stock Ownership Plan, or "ESOP," which was established in 1991. The ESOP's primary purpose is to provide retirement benefits to Central States's employees.

On December 31 of each calendar year, Central States contributes stock shares and/or cash to each employee's ESOP retirement account. Employees with greater seniority and higher salaries will receive proportionally greater yearly contributions to their retirement accounts than recently hired, less highly paid employees. The parties agree that the ESOP, which currently has more than 700 total participants or beneficiaries, qualifies as a pension plan subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), as codified at 29 U.S.C. § 1002, *et seq.*

When a Central States employee retires or leaves the Company, that employee stops receiving new stock and/or cash deposits into his or her ESOP account. The ESOP's Trustee, GreatBanc, determines the fair market value of the shares in the employee's retirement account. The Company then pays the employee for his or her shares in installments over a five-year period. Once those shares are repurchased, or "redeemed," they are taken out of circulation and "retired"—not recycled or reallocated to the ESOP. This means that as people retire from the Company, the available share pool shrinks.

The three named Plaintiffs retired or separated from Central States. Shipp and Yazel left the Company in 2018 but were still receiving payouts for their ESOP retirement shares at the time the events described in the Amended Complaint occurred. Tate left the Company more recently, in 2022, and was also receiving payouts. Plaintiffs accuse Defendants of breaching the fiduciary duties that they owed to the ESOP and its Plan participants by entering into a specific financial transaction at the end of 2020 that allegedly diminished and diluted the value of all ESOP shares. Plaintiffs sue on behalf of themselves and a purported class of ESOP participants and beneficiaries.

### B.  The "Redemption Event" in August 2020

By 2020, Central States's employee retirement plan was considered a "mature" ESOP. This means that the initial debt that the Company incurred to purchase the shares to fund the ESOP had been paid off, while a certain number of shares remained available for distribution to plan participants.  However, Central States alleges that it became concerned about its dwindling stock reserves and what it viewed as a disproportionate

3

concentration of company stock vesting in the retirement accounts of a handful of highly compensated, long-term employees. According to Central States, at some point new employees would not have the benefit of receiving stock shares to fund their retirement accounts because of an insufficient number of shares available for distribution. Further, Central States alleges that sometime in 2015, the per-share value of the Company's stock began to surge ahead of the Company's total equity value. As the value of the ESOP shares grew, the Company claims it faced a looming financial crisis: If long-term employees holding a high concentration of shares retired, the payoff process could create a cashflow problem for the Company—or possibly bankrupt it.

Plaintiffs disagree that retiring employees posed a real—or at least significant—financial threat to Central States. Instead, Plaintiffs contend that the Company dreaded paying its retirees the fair market value of their ESOP shares—as they were required to do under ERISA—and conspired with the Company's Board of Directors and ESOP Trustee, GreatBanc, to avoid that legal obligation and protect Central States's pocketbook at the expense of the Company's most senior and loyal employees.

The Amended Complaint focuses on two financial transactions that—collectively—negatively impacted the value of the ESOP's shares. The first transaction took place starting in August 2020; Plaintiffs are careful to point out that this transaction, in isolation, did not damage the value of the ESOP's shares but instead laid the necessary groundwork for a second transaction in December 2020 that Plaintiffs believe caused them substantial damage.

In August, Central States took out a bank loan for $40 million and used it to purchase, or "redeem," 2,222,222.22 shares owned by certain ESOP participants who were retired, retiring, or separating from the Company. GreatBanc set the fair market value of each share at $18 (2,222,222.22 shares x $18 per share = $40,000,000). However, instead of retiring the shares after redemption, Central States decided to place them back into circulation to fund future contributions to employee retirement accounts. Plaintiffs agree that the August "redemption" transaction did not, in and of itself, violate ERISA.

### C.  The "Dilution Event" in December 2020

Part two of the transaction happened in December 2020. The Company conveyed the 2.2 million redeemed shares to the ESOP, in exchange for the ESOP issuing the Company a promissory note in the sum of $40 million—the same amount that the Company spent purchasing the shares—to be repaid over 30 years.

Once the ESOP received these shares, they were retained in a "suspense account" to be allocated to participants little by little, over the course of the next thirty years. As the $40 million loan was repaid, the equivalent value of company shares would be released from the suspense account and made available for the ESOP retirement accounts.

Defendants label the transaction in December as a "releveraging" of the Company's stock. Plaintiffs agree that a releveraging event is not, per se, illegal; however, they claim that the structure of this particular releveraging event violated ERISA. Plaintiffs argue that though the redemption event in August properly valued the stock shares at $18

5

per share, those same shares were worth a lot less money in December, after the Company had taken on $40 million of new debt. The ESOP paid for the redeemed shares with a promissory note that assumed the value of the shares had not changed, which suggests that the ESOP overpaid Central States for these shares to the ESOP participants' detriment. Furthemore, Plaintiffs argue that the value of their *existing* shares in the ESOP were diluted by about 19% when the ESOP acquired these new 2.2 million shares and moved them into the suspense account.[1]

Furthermore, Plaintiffs suggest that there were other reasonable options that Central States Defendants and GreatBanc could have used to address the alleged financial threat faced by the Company's retirees. In Plaintiffs' view, any of these alternatives would have been preferable to the December 2020 releveraging. According to the Amended Complaint, "Such alternatives might have included, among other things, having the ESOP itself purchase shares from the inactive participants and then

---

[1] Plaintiffs' calculations are set forth in their Brief in Opposition to GreatBanc's Motion to Dismiss, (Doc. 70, p. 4, n. 4 & 5):

> There were a total of 11,816,479 outstanding shares at the end of 2020; assuming no other transactions around December 2020 affected the number of Company shares, this means that prior to the issuance of 2,222,222 shares in December 2020, there were 9,596,257 outstanding shares. The December Transactions therefore caused a 23.16% increase in the total number of shares.
>
> Because the unchanged equity value was to be shared by 11.8 rather than 9.6 million shares . . . the per share value of each pre-December Transactions share was diluted by nearly 19% (1/11.8 million is 18.6% less than 1/9.6 million).

immediately reallocating them to participants, thereby reducing or eliminating the dilutive impact." (Doc. 57, ¶ 50).

### D. Causes of Action

The Amended Complaint lists two Counts. Count 1 is alleged against all Defendants and asserts violations of ERISA at 29 U.S.C. § 1104(a)(1)(A) and (a)(1)(B), based on Plaintiffs' contention that Defendants breached their fiduciary duties to the ESOP participants and beneficiaries in conducting the December 2020 releveraging. GreatBanc is accused of authorizing the thirty-year promissory note that overvalued the 2.2 million new shares and diluted the value of the existing shares in the ESOP accounts. Count 2 is asserted only against Central States Defendants and alleges ERISA violations pursuant to § 1106(b)(1). In Count 2, Central States is accused of putting its interest in reducing its stock-repurchase obligation ahead of the legal and financial interests of the ESOP's participants by charging the ESOP too much for the new stock and causing the ESOP to incur unnecessary debt.

## II. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and

grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). However, when considering such a motion, "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The only exceptions to the rule involve "materials that are part of the public record or do not contradict the complaint" and documents "necessarily embraced by the pleadings." *Id.* (quotations and citations omitted).

### III. DISCUSSION

#### A. Lack of Standing

GreatBanc argues that Plaintiffs failed to state facts to show that the ESOP—as distinct from the individual Plaintiffs—suffered an injury in fact. In GreatBanc's view, Plaintiffs fail to state a claim unless they can demonstrate a plausible injury to the ESOP as a result of the releveraging transaction in December 2020. GreatBanc claims that the December releveraging did nothing more than shift ESOP shares from existing retirement accounts into a suspense account, which means the ESOP's overall "pie" of shares did not shrink as a result of the releveraging; instead, the pie was only sliced up a little differently. In addition, GreatBanc maintains that Plaintiffs have not stated a plausible claim that the ESOP paid less than fair market value for the 2.2 million shares in the transaction. To GreatBanc, this allegation is nothing more than rank speculation, unsupported by any facts.

Plaintiffs first respond that they did, in fact, allege a separate injury to the ESOP: that the Plan overpaid for the new shares it purchased. Second, they point out that the

8

relevant injury to the ESOP is tied to and measured against the injury done to the individual participant accounts—which Plaintiffs claim have been diluted in value.

The Court has reviewed the cases cited by both parties on the topic of standing and finds that Plaintiffs have the better argument. They plausibly allege that the ESOP suffered an injury by overpaying for the redeemed shares and that the releveraging caused ESOP participants to suffer financial injury based on the dilution in value of their vested shares. The veracity of these allegations will be tested in the course of discovery.

### B. Failure to Exhaust Administrative Remedies before Bringing Suit

Central States argues that even though Plaintiffs' causes of action appear to be statutory in nature, the claims are really plan-based, so Plaintiffs should be required to exhaust their administrative remedies before bringing suit. Plaintiffs respond that their claims are not plan-based. The Court agrees with Plaintiffs that the nature of their claims arise from alleged violations of the ERISA statute itself. Though it appears that the Eighth Circuit has not definitively ruled that exhaustion is not unnecessary before suing on statutory claims, the majority of other circuits have so ruled. *See Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 564 (6th Cir. 2017) (Sixth Circuit agreeing with the Third, Fourth, Fifth, Ninth, Tench, and D.C. Circuits that exhaustion is not required when plaintiffs seek to enforce statutory, as opposed to contractual, ERISA rights). Plaintiffs' claims are therefore ripe and properly before this Court for adjudication.

### C. Failure to State Claims for Breach of Fiduciary Duties Under ERISA

To prevail on a breach of duty claim under ERISA, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and

9

thereby caused a loss. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

Central States Defendants note that there is a "tension inherent in the fiduciaries' dual roles as ERISA fiduciaries and [company] officers," *Dormani v. Target Corp.*, 970 F.3d 910, 917 (8th Cir. 2020). The Company's Board of Directors must "wear two hats" and make business decisions that sometimes collaterally affect the ESOP. Central States Defendants contend that the Amended Complaint describes nothing more than business decisions taken by the Board, as recommended by GreatBanc. Further, Central States points out that its Board of Directors owe only limited duties to the ESOP: All they are required to do is appoint the ESOP Trustee, who is vested with sole discretion over investment and purchasing decisions regarding company stock.

The parties agree that Central States is a "plan administrator within the meaning of Section 414(g) of the Code and Section 3(16) of ERISA." (Doc. 2-1, ESOP Plan Document, § 18.3). GreatBanc observes in support of Central States Defendants' argument that according to Eighth Circuit precedent, when a company makes "normal decisions with potential collateral effects on prospective, contingent benefits," they "need not be made in the interest of plan participants." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 646 (8th Cir. 2007).

As for GreatBanc, it argues that the Amended Complaint fails to "connect the dots" to explain exactly how its personal interests were benefited in any respect by the

10

December 2020 releveraging. GreatBanc claims it had no incentive, financial or otherwise, to act for the benefit of Central States Defendants and to the detriment of the ESOP participants, which means the Court should view Plaintiffs' breach of the duty of loyalty claims as implausible and dismiss them.

Plaintiffs respond that GreatBanc asked Central States Defendants to approve a releveraging plan that was not "solely in the interest" of ESOP participants, (Doc. 57, ¶¶ 45–48), so Central States Defendants owed a duty to the ESOP to prevent the transaction from happening, including permitting GreatBanc from issuing the promissory note. Plaintiffs point out that as Plan Administrator, Central States was tasked with management and administration of the Plan, which necessarily impacted the actions complained of in the Amended Complaint: acquisition of company stock, incursion of debt, and dilution of participant account values. Therefore, in Plaintiffs' view, Central States Defendants' decisions were not *purely* corporate decisions; they also impacted the administration and management of the ESOP.

Defendants are correct that "ESOP fiduciaries should not be subject to breach-of-duty liability for investing plan assets in the manner and for the multiple purposes that Congress intended." *Martin v. Fellen*, 965 F.2d 660, 670 (8th Cir. 1986). However, Plaintiffs' allegations, which are assumed as true for purposes of evaluating the Motions to Dismiss, are not wholly implausible. In particular, GreatBanc's defense that it approved the releveraging transaction because it was in the best interests of the ESOP as a whole (even if it damaged a few of the participants) is a fact question; the Court will not wade into it on a Rule 12(b) analysis. Further, the Amended Complaint plausibly alleges that

the terms of the releveraging deal were imprudent and, therefore, the result of an imprudent decision-making process in violation of ERISA. Because GreatBanc and Central States Defendants failed to consider viable alternatives to releveraging that could have reduced or avoided the dilution of participants' shares, Plaintiffs accuse them of breaching their fiduciary duties under ERISA. Though Central States characterizes Plaintiffs' allegations of share dilution and overpayment for shares as "exaggerated and incorrect" and their suggested alternatives to releveraging as "conclusory fluff." (Doc. 66, p. 24), the Court cannot simply assume Defendants are right and Plaintiffs are wrong. The claims asserted in the Amended Complaint are plausible enough to chin the bar and survive dismissal under Rule 12.

### D.  Affirmative Defense

Defendants' last argument is that the conduct alleged by Plaintiffs, even if true, would fall under a statutory exemption to ERISA found at 29 U.S.C. §§ 1108(b)(3) and (e). This exemption applies when there is "[a] loan to an employee stock ownership plan . . . primarily for the benefit of participants and beneficiaries of the plan." The Court finds once again that whether the exemption applies is a fact question. Though Defendants contend that the price of shares and the value of the promissory note were both properly calculated and clearly in the best interests of the ESOP and its participants, the Amended Complaint plausibly alleges otherwise.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the reasons stated above and those announced from the bench during the hearing on June 17, Defendants' Motions to

Dismiss (Docs. 63 & 65) are **DENIED**. Defendants were given a deadline of July 8, 2024 (twenty-one days after the hearing) to file their answers to the Amended Complaint. That deadline remains in effect.

    **IT IS SO ORDERED** on this 5th day of July, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE