**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

JUSTIN SHIPP; VINCENT TATE;
and TERRENCE YAZEL,
individually and on behalf of others
similarly situated,                                                                     **PLAINTIFFS**

vs.                                            **Case No. 5:23-cv-05215-TLB**

CENTRAL STATES MANUFACTURING, INC.;
CENTRAL STATES MANUFACTURING, INC.
BOARD OF DIRECTORS; GREATBANC TRUST CO.;
JAMES SLIKER; CHAD WARE; THOMAS FERREE;
MATT KRAMER; TINA CHANG; AND MATTHEW STITES                   **DEFENDANTS**

---

**PLAINTIFFS' MEMORANDUM SUPPORTING THEIR MOTION FOR CLASS
CERTIFICATION**

---

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

III.  CLASS CLAIMS ........................................................................................................ 6

IV.   CLASS DEFINITION ................................................................................................ 8

V.    ARGUMENT .............................................................................................................. 9

      A.    The Legal Standard for Certification ............................................................... 9

      B.    The Class Is Ascertainable ............................................................................... 9

      C.    The Class Satisfies Rule 23(a) ....................................................................... 10

            1.    The Class Is Sufficiently Numerous ..................................................... 10

            2.    Questions of Law and Fact are Common to the Class ........................... 10

            3.    Named Plaintiffs' Claims Are Typical of Those of Class
                  Members .............................................................................................. 12

            4.    Named Plaintiffs Will Fairly and Adequately Protect the
                  Interests of the Class ............................................................................ 15

      D.    The Class Satisfies the Requirements of Rule 23(b) ...................................... 15

            5.    The Class Should be Certified Under Rule 23(b)(1)(A) or
                  (B) ....................................................................................................... 15

            6.    Alternatively, the Class Should be Certified Under Rule
                  23(b)(3) ................................................................................................ 18

                  a.    Common Issues Predominate ..................................................... 19

                  b.    A Class Action Is Superior to Other Available
                        Methods of Adjudication ........................................................... 24

VI.   CLASS COUNSEL .................................................................................................. 25

VII.  CONCLUSION ........................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997) ................................................................................................ 16, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
　568 U.S. 455 (2013) ........................................................................................................ 19

*In re Aquila ERISA Litig.*,
　237 F.R.D. 202 (W.D. Mo. 2006) ................................................................................. 17

*CIGNA Corp. v. Amara*,
　563 U.S. 421 (2011) ........................................................................................................ 22

*Comcast Corp. v. Behrend*,
　569 U.S. 27 (2013) ............................................................................................. 22, 23, 24

*Day v. Celadon Trucking Servs.*,
　827 F.3d 817 (8th Cir. 2016) ......................................................................................... 24

*DeBoer v. Mellon Mortg. Co.*,
　64 F.3d 1171 (8th Cir. 1995) ......................................................................................... 15

*Donovan v. Bierwirth*,
　754 F.2d 1049 (2d Cir. 1985) ........................................................................................ 23

*Jones v. NovaStar Fin., Inc.*,
　257 F.R.D. 181 (W.D. Mo. 2009) ........................................................................... 16, 18

*Martin v. Feilen*,
　965 F.2d 660 (8th Cir. 1992) ................................................................................... 20, 24

*McKeage v. TMBC, LLC*,
　847 F.3d 992 (8th Cir. 2017) ..................................................................................... 9, 10

*Mertens v. Hewitt Assocs.*,
　508 U.S. 248 (1993) ........................................................................................................ 22

*Murphy v. Gospel for Asia, Inc.*,
　327 F.R.D. 227 (W.D. Ark. 2018) (Brooks, J.) ..................................................... 12, 22, 24

*Postawko v. Missouri Dept. of Corrections*,
　910 F.3d 1030 (8th Cir. 2018) ................................................................................... 9, 12

iii

*Randall v. Greatbanc Trust Company,*
    2025 WL 260160 (D. Minn. Jan. 22, 2025)....................................................................17, 18

*Rodriguez v. Hy-Vee, Inc.,*
    2023 WL 4358705 (S.D. Iowa Apr. 26, 2023) ......................................................................16

*Roth v. Sawyer-Cleator Lumber Co.,*
    61 F.3d 599 (8th Cir. 1995) ................................................................................................23

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,*
    821 F.3d 992 (8th Cir. 2016) .........................................................................................9, 10

*Schatz v. Quapaw House, Inc.,*
    2021 WL 3008597 (W.D. Ark. July 15, 2021) (Brooks, J.) ............................................24, 25

*Silva v. Metro. Life Ins. Co.,*
    762 F.3d 711 (8th Cir. 2014) ..............................................................................................22

*Stuart v. State Farm Fire & Cas. Co.,*
    910 F.3d 371 (8th Cir. 2018) ..............................................................................................19

*In re Target Corp. Customer Data Sec. Breach Litig.,*
    847 F.3d 608 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017) ................................15

*Tyson Foods, Inc. v. Bouaphakeo,*
    136 S. Ct. 1036 (2016) ......................................................................................................22

*Vogt v. State Farm Life Ins. Co.,*
    963 F.3d 753 (8th Cir. 2020) ..............................................................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .....................................................................................................10, 12

*In re Wholesale Grocery Prods. Antitrust Litig.,*
    2016 WL 4697338 (D. Minn. Sept. 7, 2016).......................................................................10

*Wildman v. Am. Century Servs., LLC,*
    2017 WL 6045487 (W.D. Mo. Dec. 6, 2017).................................................................12, 17

*In re Zurn Pex Plumbing,*
    644 F.3d 604 (8th Cir. 2011) ..............................................................................................19

## Statutes

26 U.S.C. § 409(h)(1)(B)............................................................................................................2

29 U.S.C. § 1002(21)(A) ...................................................................................................7, 11, 20

29 U.S.C. § 1104(a) ....................................................................................................7, 11, 16, 21

29 U.S.C. § 1106 ................................................................................................. 8, 11

29 U.S.C. § 1132(a)(2) ............................................................................ 8, 11, 18, 22

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................*passim*

John H. Langbein et al., *Pension and Employee Benefit Law* (6th ed. 2015) ............................ 16

William B. Rubenstein, *Newberg on Class Actions* § 3:39 (6th ed. 2022) ................ 14, 16, 17, 24

## I.    INTRODUCTION

This action concerns the Employee Stock Ownership Plan (the "ESOP") maintained by Central States Manufacturing, Inc. ("CSMI" or the "Company"). The ESOP is a defined contribution retirement plan that provides retirement benefits to CSMI employees by holding CSMI stock in trust and allocating shares to participant accounts. Plaintiffs allege that the ESOP's fiduciaries—CSMI, the CSMI Board of Directors, CSMI executives and Board members (collectively, the "Company Defendants"), and GreatBanc Trust Company ("GreatBanc")— breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") by causing the ESOP to engage in a December 2020 "Releveraging" transaction, which stripped ███████ from the value of every CSMI share allocated to ESOP participant accounts.

Class certification is particularly appropriate because the Class comprises only participants and beneficiaries (collectively "Participants") of the ESOP and the Class claims are based on common conduct that caused a single ESOP transaction that harmed all Participant shareholders (numbering in the hundreds). Plaintiffs' claims are typical of those of the Class, including because Defendants owed the same fiduciary duties to all Participant shareholders, their common conduct violated those duties as to all Participant shareholders, ████████████████████████ ██████████████████████. Each named Plaintiff has common interests with the Class and will continue to vigorously prosecute the interests of Class through qualified counsel.

Courts have consistently recognized that ERISA fiduciary class actions like this are prime examples of Rule 23(b)(1) classes. ERISA requires fiduciaries to treat all plan participants alike and allows each participant to file suit to recover losses to the plan, meaning that individual actions could both result in incompatible standards of conduct and impact the claims of other participants.

In the alternative, the Class satisfies the predominance and superiority requirements of Rule 23(b)(3). Issues common to the Class predominate over individual issues, including because

fiduciary status and breach will be evaluated by applying uniform ERISA principles to common conduct and monetary remedies will be determined according to a common methodology using inputs from common ESOP records. And a class action is superior to other available methods of resolving this matter, including because resolving the core factual and legal issues for each Plaintiff will resolve them for the entire Class and adjudication on an individual, participant-by-participant basis would make little sense.

Plaintiffs respectfully request that the Court certify the Class.

## II.    FACTUAL BACKGROUND

**The ESOP:** The ESOP was formed in 1991 ███████████████████████ ██████████████████████████████████ █████████████████████████████ which were allocated to the accounts of Participants who completed a requisite number of hours of service during the year of contribution, *see* Ex. D (the "Plan Document") Art. VI, VII.[2] CSMI is obligated by ERISA and the Plan Document to repurchase shares of CSMI stock after a Participant retires or otherwise terminates employment (referred to herein as CSMI's "repurchase obligation"). *See* 26 U.S.C. § 409(h)(1)(B); Ex. D §§ 14.1, 15.1, 16.2.

The ESOP's assets are held in a trust controlled by a trustee appointed by the CSMI Board of Directors. Ex. D §§ 2.3, 2.15, 2.60. GreatBanc was the Trustee of the ESOP ███████████ ████ through January 2021. Exs. E, JJ. As of August 2020, the ESOP Trust Agreement granted GreatBanc "full and complete investment authority and responsibility with respect to the purchase



---

[1] "Ex. __" refers to the Exhibits to the Declaration of Gary A. Gotto in Support of Plaintiffs' Motion for Class Certification ("Gotto Decl."). Where an exhibit has been Bates stamped, pin cites refer to Bates numbers; otherwise, pin cites refer to the exhibit's original pagination.

[2] ██████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████

... and pledge of Company Stock" and "complete authority to ... enter into transactions for the purpose of acquiring or selling Company Stock, including transactions with the Employer ... , and to borrow money ... to finance the acquisition of Company Stock." Ex.  F § 5.1(a)(i).

**The December 2020 Releveraging Transaction:** ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

      ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

        ████████████████████████████████████████
        ████████████████████████████████████████
        ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**Defendants' Evaluation and Approval of the Releveraging:** ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

CSMI and GreatBanc entered into a Fifth Amendment to Successor Trustee Engagement Agreement dated October 21, 2020, which noted that the Company was "contemplating a $40 million releveraging transaction," and stated that "[t]he Trustee has advised the Company that it intends to conduct procedures to evaluate, negotiate and finalize the Transaction for the benefit of the ESOP Trust ... ." Ex. W. ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ultimately, the Defendant ESOP fiduciaries failed to consider or select viable alternatives to the December 2020 Releveraging that would have eliminated (or at least greatly reduced) the harm to Participant shareholders. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

**Plaintiffs:** Plaintiffs and proposed Class Representatives Justin Shipp, Terrence Yazel, and Vincent Tate were all ESOP Participants on December 2, 2020 with fully-vested shares allocated to their accounts. *See* Declarations of Plaintiff T. Yazel ("Yazel Decl."), Plaintiff V. Tate ("Tate Decl."), and Plaintiff J. Shipp ("Shipp Decl."), filed herewith ████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

### III.    CLASS CLAIMS

***Fiduciary Status*:** ERISA imposes a functional test for fiduciary status. A fiduciary is one who, *inter alia*, (1) "exercises any discretionary authority or discretionary control respecting management of such plan," (2) "has any discretionary authority or discretionary responsibility in

the administration of such plan," or (3) "exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Each Defendant was a fiduciary with respect to the December 2020 Releveraging. *See* First Amended Complaint (ECF No. 57) ("FAC") ¶¶ 9-17, 33-37. GreatBanc was a fiduciary because the Trust Agreement granted it "sole discretion" and "complete authority" over the ESOP's purchase of Company stock and because GreatBanc authorized the Releveraging on behalf of the ESOP. *Id.* ¶¶ 37, 45. The management Defendants, James Sliker and Chad Ware, were fiduciaries because they designed, executed, and ultimately caused the Releveraging. *Id.* ¶¶ 11-12, 45. The Board defendants—i.e. James Sliker, Thomas Ferree, Matt Kramer, Tina Chang, Matthew Stites, and the Board as an entity—were fiduciaries because they oversaw the design of, evaluated, and approved the Releveraging. *Id.* ¶¶ 10-16, 45. They were also fiduciaries because, having appointed GreatBanc as the ESOP trustee, they were obligated to monitor its actions and prevent breaches of GreatBanc's fiduciary duties. *Id.* ¶ 3, 35, 65(A). CSMI was a fiduciary because it was the Plan administrator under the Plan Document and it designed, evaluated, approved, and implemented the Releveraging through the acts of its management and Board. *Id.* ¶¶ 9-16, 33, 45-47.

**Breaches of Fiduciary Duties**: ERISA imposes the fiduciary duty of loyalty, which requires that a fiduciary act "solely in the interest" of plan participants. 29 U.S.C. § 1104(a)(1). It also imposes the duty of prudence, which requires a fiduciary to act "with the care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.*

Plaintiffs allege that Defendants breached these duties, including because they failed to consider whether the Releveraging was in the best interest of ESOP Participants, failed to consider the impact of the Releveraging on Participant accounts, failed to adequately consider alternatives

to the Releveraging that would have avoided or mitigated the harms to Participants, approved the Releveraging despite the harms to Participants, acted in the interest of CSMI to reduce its repurchase obligation instead of acting "solely in the interest" of Participants, failed to adequately consider the price paid by the ESOP, and caused the ESOP to incur unnecessary debt by overpaying for shares in the Releveraging. FAC ¶¶ 49-52, ¶¶ 60-69. The Board Defendants further breached their duties by failing to monitor GreatBanc to ensure its adherence to ERISA's fiduciary duties and failing to replace GreatBanc with a competent fiduciary. *Id.* ¶ 65

*Company Defendants' Prohibited Transaction*: The Company Defendants also engaged in a prohibited transaction under 29 U.S.C. § 1106 because (1) CSMI, a fiduciary, dealt with ESOP assets for its own account by diluting the value of Participants' shares in order to reduce its own repurchase obligation, and (2) all Company Defendants acted on behalf of CSMI even though its interests were adverse to those of the ESOP and its Participants because it aimed to reduce its repurchase obligations to Participants' detriment. FAC ¶¶ 72-73.

*Relief Sought*: Plaintiffs seek recovery of losses to ESOP participant accounts caused by Defendants' ERISA violations, *see* 29 U.S.C. §§ 1132(a)(2), 1109; *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 255-56 (2008), and "appropriate equitable relief," including surcharge, to "redress such violations," 29 U.S.C. § 1132(a)(3). *See* FAC ¶¶ 67-69, 75-77.

## IV.    CLASS DEFINITION

Subject to the exclusions set forth below, Plaintiffs move the Court for an order certifying the following plaintiff class (the "Class"):

> All participants of the CSMI ESOP who had shares of CSMI stock allocated to their ESOP trust accounts as of December 2, 2020, and who have vested in those shares, in whole or in part, as of the date of the Court's order certifying the class, and the beneficiaries of such participants.

Excluded from the Class are Defendants, their corporate subsidiaries and affiliates, and the Judge

to whom the case is assigned and his immediate family.

## V.     ARGUMENT

### A. The Legal Standard for Certification

A district court must determine that a class (1) is ascertainable, *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016); (2) meets the four requirements of Rule 23(a); and (3) meets one of the three requirements of Rule 23(b). "Merits questions may be considered … only to the extent … they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," and the Court's "primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dept. of Corrections*, 910 F.3d 1030, 1037 (8th Cir. 2018). Here, the proposed Class is ascertainable and meets the requirements of Rule 23.

### B. The Class Is Ascertainable

A class is ascertainable "when its members may be identified by reference to objective criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). The Class definition above provides objective criteria that describe a group of identifiable individuals: (1) participants of the ESOP (and their beneficiaries) (2) who had shares of CSMI stock allocated to their ESOP accounts as of December 2, 2020, and (3) who have vested in those shares, in whole or in part, as of the date of the Court's order certifying the class.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ Because class members can be identified using objective criteria applied to ESOP records, the class is ascertainable. *See, e.g.*, *Sandusky*, 821 F.3d at 997 (class of fax recipients ascertainable based on fax logs); *McKeage*, 847 F.3d at 999 (class ascertainable based on defendants' customer files).

### C. The Class Satisfies Rule 23(a)

### 1. The Class Is Sufficiently Numerous

A proposed class is sufficiently numerous if "joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is met here. ████████████████ ██████████████████████████ Participants had CSMI shares allocated to their ESOP accounts on December 2, 2020, Ex. GG, a number that renders joinder impracticable.

### 2. Questions of Law and Fact are Common to the Class

The commonality requirement is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single [common] question will do." *Id.* at 359.

The Class's claims and injuries stem from a common transaction—the December 2020 Releveraging—and its impact on the Participants of a single plan, the ESOP. *Supra* p. 3. Evidence

████████████████████████████████████████████

████████████████████████████████████ *See In re Wholesale Grocery Prods. Antitrust Litig.*, 2016 WL 4697338, at *5 (D. Minn. Sept. 7, 2016) ("[t]he precise contours of the class need not be ascertained before certification so long as the class members can be identified at some stage of the proceeding.").

10

common to all Class members will demonstrate Defendants' common process that led to their common decisions to approve and implement the Releveraging. *Supra* pp. 3-6. Common evidence will prove the Releveraging's common effect on each Class member, ███████████████████ ████████████████████████████████████████████ *See supra* p. 3-4. In other words, all Class members' claims turn on a core of common factual issues.

These common facts, and the underlying common evidence, will answer common factual and legal questions, including: (1) whether each Defendant's common conduct constitutes discretionary authority or control over the "management" or "administration" of the ESOP or control over the disposition or management of ESOP assets within the meaning of ERISA's functional fiduciary definition, *see* 29 U.S.C. § 1002(21)(A); (2) whether in causing the ESOP to engage in the 2020 Releveraging and approving the Releveraging on behalf of the ESOP, the Defendants acted contrary to ERISA's fiduciary duties of loyalty and prudence, 29 U.S.C. § 1104(a); (3) whether the Company Defendants, by dealing with the assets of the ESOP with an eye towards the Company's interests engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(b)(1) and (b)(2); and (4) what remedies should be provided to the Class, including the amount and appropriate common measure of monetary relief to make participant accounts whole for the losses caused by Defendants' common ERISA violations, *see* 29 U.S.C. §§ 1132(a)(2), 1109, *LaRue*, 552 U.S. at 255-56, and what "appropriate equitable relief," including surcharge, should be imposed to "redress such violations," 29 U.S.C. § 1132(a)(3).

The answers to the common questions about fiduciary status and breach will be the same for every member of the Class. They will be driven by the application of common ERISA fiduciary law to common facts that do not vary by Class member. Likewise, the evaluation of remedies will present common questions about what monetary and equitable remedies are best suited to redress

Defendants' common misconduct, including the proper common methodology for measuring Class member relief. *See* Ex. B at 48-54 (detailing common methodology). Common questions are thus "apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, and the Class easily satisfies Rule 23(a)(2). *See also infra* pp. 19-24 (addressing the common questions in more detail within the context of Rule 23(b)(3)'s predominance requirement).

### 3.  Named Plaintiffs' Claims Are Typical of Those of Class Members

The claims of a class representative must be "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." *Postawko*, 910 F.3d at 1039 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citing *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)). *See also Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227, 236 (W.D. Ark. 2018) (Brooks, J.) ("Because the legal theories would all be premised on the same pattern or practice, the Court finds that the typicality requirement has been satisfied").

Each Plaintiff's claims are identical to those of the Class. Defendants, to the extent they were fiduciaries regarding the 2020 Releveraging, were fiduciaries to the ESOP and thus shared that status with respect to all Class members. Defendants likewise shared identical statutory fiduciary duties to all Class members. Their common conduct brought about the Releveraging ████ ████████████████████████████████████████████████ Defendants' liability for that conduct is the same as to all Class members. ████████████████████████ ████████████████████████████████████████████████████████

████ The common conduct described above, in other words, violated Defendants' duties under ERISA as to all members of the Class or none. *See Wildman v. Am. Century Servs., LLC*, 2017

WL 6045487 at *5 (W.D. Mo. Dec. 6, 2017) (plaintiffs' claims were "typical of those of the putative class members because all class members are participants in the Plan, and the alleged breaches of fiduciary duties were directed to the Plan rather than to individual participants").

Defendants may ███████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Second, ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ including

[5] As Mr. Messina explains, ██████████████████████████████████████████
████████████████████████████████████████████ Nor were the suspense shares
necessary if CSMI decided it wanted to increase its share contributions, █████████
███████████████████████████████

because the August account segregation was a distinct, ██████████ transaction completed

months before the Releveraging occurred ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Supra*

p. 3.[6] And as Mr. Messina explains, the Releveraging was unnecessary to make additional shares

available to more junior employees: ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████ Ex. B at 29-30; Ex. HH at 16-17. ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ much less rise to the level of an intra-class conflict that would undermine

typicality. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767-68 (8th Cir. 2020) (noting

---

[6] In ERISA cases, "the proposed class representative's claims are generally held to be typical of the class members' claims even if the proposed representatives[] … have not suffered equally as a result of alleged fiduciary breaches." 1 William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 3:39 (6th ed. 2022).

that "to forestall class certification [an] intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole," and rejecting argument that a conflict existed between current and former policyholders or between longer-term and shorter-term policyholders, including because any "slight divergence [wa]s greatly outweighed by shared interests in establishing [defendant's] liability").

### 4. Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires inquiry into two issues: "whether the named representatives (1) have common interests with the members of the class and (2) will vigorously prosecute the interests of the class through qualified counsel." *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 613 (8th Cir. 2017), *amended*, 855 F.3d 913 (8th Cir. 2017). The key to the first part of the analysis is whether there are any "conflicts of interest between named parties and the class they seek to represent." *Id*. Here Plaintiffs have no conflicts of interest with the Class: they can recover only if they succeed on legal theories that would lead to recovery for the Class. Moreover, each Plaintiff has confirmed in a declaration that he understands the duties of a class representative, is fulfilling those duties, and has acted consistent with those duties throughout the course of this litigation.[7] As to the second part of the analysis, Plaintiffs have engaged counsel with extensive experience litigating complex cases generally, and ERISA actions specifically. *See infra* p. 25.

### D. The Class Satisfies the Requirements of Rule 23(b)

Plaintiffs seek certification under Rule 23(b)(1) or, in the alternative, Rule 23(b)(3). *See DeBoer*, 64 F.3d at 1175 (when subsection (b)(1) is applicable, (b)(3) should not be used, "so as to avoid unnecessary inconsistencies and compromises in future litigation.").

### 5. The Class Should be Certified Under Rule 23(b)(1)(A) or (B)

ERISA fiduciary breach actions, like this one, are "paradigmatic example[s]" of Rule

---

[7] *See* Shipp Decl. ¶¶ 9-12, Tate Decl. ¶¶ 9-12, Yazel Decl. ¶¶ 9-12.

23(b)(1) class actions. *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009). Indeed, "[m]ost ERISA class actions are certified under Rule 23(b)(1)." *Rodriguez v. Hy-Vee, Inc.*, 2023 WL 4358705, at *2 (S.D. Iowa Apr. 26, 2023).

Rule 23(b)(1) authorizes certification when "prosecuting separate actions by … individual class members would create a risk of":

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Subsection A attempts to avoid possible prejudice to Defendants, while subsection B attempts to avoid possible prejudice to class members." *Jones*, 257 F.R.D. at 193. Although a class need only satisfy one subsection of Rule 23(b)(1), here "[c]lass certification is appropriate under both" because "[p]ursuing separate actions would risk inconsistent conclusions concerning liability, remedies, and Defendants' standards of conduct." *Id.* at 194.

Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike … or where the party must treat all alike as a matter of practical necessity." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted). An ERISA fiduciary is obliged to treat all participants with undivided loyalty, 29 U.S.C. § 1104(a)(1), and hence with complete impartiality. *See* John H. Langbein et al., Pension and Employee Benefit Law at 508-10 (6th ed. 2015) (discussing the trust law duty of impartiality carried over into ERISA). A fiduciary has a "legal duty to treat all plan members alike." Newberg, § 4:12. Accordingly, multiple actions challenging an ERISA fiduciary's conduct would necessarily create a risk of incompatible standards of conduct for the fiduciary, and "courts regularly certify ERISA cases under Rule 23(b)(1)(A)." *Id.* (citing numerous cases).

16

For example, *Harju v. Olson* certified a class under Rule 23(b)(1)(A) because there was "a risk that prosecution of separate actions" by plan participants "would result in inconsistent adjudications that would establish incompatible standards of conduct" for the defendant fiduciaries. 709 F. Supp. 2d 699, 735 (D. Minn. 2010). Likewise, in *Rozo v. Principal Life Ins. Co.*, where the "core of the case [wa]s Principal's management and administration of the PFIO plan (possibly as a fiduciary)," the court concluded that if "adjudication proceeds on an individualized basis, there is a very real risk of inconsistent judgments regarding Principal's fiduciary status and its compliance with ERISA standards." 2017 WL 2292834, *5 (S.D. Iowa May 12, 2017). *See also Wildman*, 2017 WL 6045487 at *6 ("separate lawsuits by individual Plan participants could establish incompatible standards governing Defendants' conduct."); *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 213 (W.D. Mo. 2006).

Here too, should multiple actions proceed, Defendants would be faced with the risk of inconsistent judgements regarding their fiduciary status and their compliance with ERISA. Divergent standards might be applied to the same conduct, and contradictory rulings may result in Defendants having to abide by different remedies to ESOP participants concerning the same conduct. *See generally* Newberg § 4:6 ("proponents of a class … need not prove that multiple individual suits are inevitable; it is the risk that provides the basis for certification").

Certification would also be appropriate under subsection (B), which is concerned with the effects separate adjudications might have on different members of a class. Courts within the Eighth Circuit have acknowledged Rule 23(b)(1)(B)'s applicability in the ERISA context. Recently, *Randall v. Greatbanc Trust Company*, 2025 WL 260160 (D. Minn. Jan. 22, 2025), considered a putative class of 401(k) plan participants seeking to recoup losses caused by defendants' failure to use dividends earned by company stock in a suspense account for the benefit of plan participants.

*Id.* at *1. There, as here, plaintiffs sued under 29 U.S.C. §§ 1132(a)(2) and 1109, which permit a plan participant or beneficiary to recover losses to an ERISA plan caused by breaches of fiduciaries duties.[8] The court certified a class of Plan participants under Rule 23(b)(1)(B), explaining that "because Plaintiffs seek Plan-wide relief for actions that allegedly impacted all potential class members, Plaintiffs' proof regarding Defendants' conduct 'will, as a practical matter, significantly impact the claims of other Plan participants and of employees' who participated in the Plan." 2025 WL 260160, at *5 (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)). The court further reasoned that "'inconsistent or varying adjudications would be intolerable for the employees of the same employee benefit plans'" and that, because Plaintiffs sought Plan-wide relief, "'there is a risk that failure to certify the class would leave future plaintiffs without relief.'" *Id.* (quoting *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F.Supp.2d 1075, 1081 (D. Minn. 2009)). *See also Jones*, 257 F.R.D. at 193 (collecting cases certifying classes alleging breaches of ERISA fiduciary duties under Rule 23(b)(1)(B)).

This rationale also applies here. If Defendants are ESOP fiduciaries, they are fiduciaries as to *all* Class members. If Defendants breached ERISA's fiduciary duties with respect to the Releveraging, they did so as to *all* Class members. And ERISA permits each Participant to file a suit to recover losses to the plan. Accordingly, litigation by one ESOP Participant would, as a practical matter, impact the claims of other ESOP Participants regarding the same conduct, and the interest of other participants would be practically determined by the result of this case.

### 6. Alternatively, the Class Should be Certified Under Rule 23(b)(3)

Certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class

---

[8] In the context of individual account plans, like the 401(k) plan in *Randall* or the ESOP here, recoverable plan losses include losses to participant accounts. *LaRue*, 552 U.S. at 255-56.

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both the predominance and superiority requirements are satisfied here.

### a. Common Issues Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "A class may be certified based on common issues even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 375; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (Rule 23(b)(3) "does *not* require a plaintiff … to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof.").

"Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 459. "When determining 'whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings,' but that inquiry should be limited to determining whether, if the plaintiffs' 'general allegations are true, common evidence could suffice to make out a prima facie case for the class.'" *In re Zurn Pex Plumbing*, 644 F.3d 604, 618 (8th Cir. 2011).

Plaintiffs' claims are predicated on Defendants' common conduct in designing, evaluating, approving, and implementing the December 2020 Releveraging, and on the common effect of that transaction on all Class members. The overarching legal questions—fiduciary status, breach of fiduciary duties, and remedies, *see supra* pp. 6-8—all turn on the application of common ERISA principles to the common core facts. These issues are explored in more detail below.

*Fiduciary Status:* Congress enacted a uniform, functional definition of a "fiduciary" that is codified at 29 U.S.C. § 1002(21)(A). *See supra* pp. 6-7. Each Defendant's fiduciary status is based on application of this common definition to common facts.

GreatBanc was a fiduciary because it exercised discretionary control over whether to approve the December 2020 Releveraging on behalf of the ESOP, authority granted by the ESOP Trust Agreement. Ex. F § 5.1(a)(i). ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

The CSMI management defendants, i.e. Jim Sliker and Chad Ware, were fiduciaries ██ ██████████████████████████████████████████████████ the December 2020 Releveraging, a transaction that comprised the ESOP's purchase of 2.2 million new shares of stock that diluted the value of shares allocated to ESOP participants by ███████. *See supra* pp. 4-6.

The Board Defendants were fiduciaries ██████████████████████████████████ ████████ the December 2020 Releveraging. *E.g.*, Exs. M, FF, T, Y. They also were fiduciaries with respect to their failure to monitor GreatBanc with respect to the Releveraging. The CSMI Board appointed the ESOP trustee, Exs. D § 2.60, F, and thus had a corresponding duty to monitor its performance. *See Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992).

CSMI is a fiduciary because it was the named plan administrator, Ex. D § 2.13. and because ████████████████████████████████████████████ the Releveraging through the acts of its management and Board, as described above.

All of the above-described conduct that forms the basis of Defendants' fiduciary status applied to the ESOP and all ESOP participants equally. Evaluating fiduciary status will thus be based on application of ERISA's common statutory standard to this common conduct.

***Breach of Fiduciary Duties:*** Congress enacted uniform fiduciary duties that apply to all ERISA fiduciaries, including the duties of loyalty and prudence. 29 U.S.C. § 1104(a)(1). It also prohibited transactions in which fiduciaries deal with plan assets in their own interests or when representing a party whose interests are adverse to those of the plan or its participants. *Id.* § 1106(b). Defendants' common conduct presents a multitude of factual and legal questions that are common to the Class, including that they failed to act as loyal and prudent fiduciaries when they:

(1) Failed to consider whether the Releveraging was in the best interest of ESOP Participants;

(2) Failed to consider and review the impact of the Releveraging on the per-share value of CSMI stock, and therefore on ESOP Participants;

(2) Failed to adequately consider alternatives that would have avoided or mitigated harm to Participants, including continuing the status quo or implementing dilution protection;

(3) Approved the Releveraging despite its dilutive effect on the value of shares allocated to Participant accounts and despite the availability of alternatives that would have avoided or mitigated harm to ESOP Participants;

(4) Failed to act "solely in the interest" of Participants with respect to the Releveraging by acting to reduce CSMI's repurchase obligation; and

(5) Failed to adequately consider and review the price paid by the ESOP and caused the ESOP to overpay for CSMI shares, and thus incur unnecessary debt, in the Releveraging.

Whether Defendants breached ERISA's common fiduciary duties will thus be answered by assessing common evidence regarding common conduct that was applicable to the ESOP and all Class members alike. These answers will not vary based on individual circumstances.

Additionally, whether the Company Defendants engaged in prohibited transactions will be answered with common evidence: they acted as or while representing a party—the Company—

21

whose interests were adverse to those of the ESOP and its Participants because the Company's interests included reducing its Repurchase Obligations at the expense of ESOP Participants.

Finally, whether the Board Defendants failed to adequately monitor GreatBanc as ESOP Trustee poses only common questions that will be answered with common evidence.

***Remedies:*** The law governing ERISA remedies is also uniform. Plan Participants may file suit to "make good to such plan any losses to the plan resulting from" a breach of fiduciary duties, 29 U.S.C. §§ 1132(a)(2) & 1109, which includes the right to recover losses to individual participant accounts, *LaRue*, 552 U.S. at 255-56. Participants may also file suit "to obtain any other appropriate equitable relief … to redress" ERISA violations, 29 U.S.C. § 1132(a)(3), which includes monetary equitable relief in the form of surcharge.[9] The availability and lineaments of these remedies does not depend on any individual conduct or circumstances.

Further, although a need to individually calculate monetary relief does not preclude class certification under Rule 23(b)(3), *see Tyson Foods*, 136 S. Ct. at 1045; *Murphy*, 327 F.R.D. at 238, calculations here further support the predominance of common questions because they may be determined pursuant to a common model that measures each Class members' losses "attributable to" the theories of liability set forth above. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

The common methodology to calculate monetary damages is laid by Plaintiffs' expert Dana Messina. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[9] "Appropriate equitable relief" includes remedies "typically available" in the historical courts of equity. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56 (1993). "Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441-42 (2011). Surcharge is a well-recognized, equitable "make-whole" remedy applicable in ERISA fiduciary breach cases. *Id*. at 441-42; *accord Silva v. Metro. Life Ins. Co*., 762 F.3d 711, 721-22, 724-25 (8th Cir. 2014) (surcharge available under 29 U.S.C. § 1132(a)(3)).

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████ █████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

     Mr. Messina thus details how calculating each Class member's monetary recovery can be performed by inputting data ████████████████████ into a common, formulaic methodology.

---

[10] Where a fiduciary is found to have breached its fiduciary duties, any "ambiguities in determining loss" are "resolve[d] against the [fiduciary] in breach." *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995). *Accord Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) ("uncertainties in fixing damages will be resolved against the wrongdoer").

*See, e.g.,* Newberg § 12:5 ("In general, formulae based on records tend to be simple and mechanical such that if properly designed, courts will rarely deny certification, as individual questions of damage will not overwhelm class damage issues."); *Day v. Celadon Trucking Servs.*, 827 F.3d 817, 833-34 (8th Cir. 2016) (WARN Act case certified under Rule 23(b)(3) where liability issues were common and damages were calculated pursuant to a common formula using individual-level employment records). ████████████████████████████████

████████████████████████████████████████████████████████

██████ as the Supreme Court recognized in *Comcast*, common formulas for calculating class remedies "need not be exact." 569 U.S. at 35. *Accord Martin*, 965 F.2d at 671-72. Because this methodology enables for mechanical, common calculation of damages, individual issues do not predominate over common issues even with respect to calculating monetary relief.

### b. A Class Action Is Superior to Other Available Methods of Adjudication

Rule 23(b)(3) sets out four non-exclusive factors for determining whether a class action is the superior method of resolving a controversy: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation already begun by class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

All of these factors confirm that a class action is superior here. First, Class members "may be dissuaded from filing individual actions as their amount of damages in each case could make the cost-benefit analysis inherent in litigation weigh against filing suit." *Murphy*, 327 F.R.D. at 242. Second, Plaintiffs are unaware of any litigation proceeding in parallel with this concerning the same claims. Third, given the size of the class and the fact that claims of each class member present common questions of fact and law, concentration of litigation in this forum would "make litigation easier, not more complicated." *Schatz v. Quapaw House, Inc.*, 2021 WL 3008597, at *4

(W.D. Ark. July 15, 2021) (Brooks, J.) ("[T]he class members will present similar facts and argue similar questions of law. It would be inefficient to require individual actions by each of the two hundred class members."). Finally, because Class members may be identified, and the value of their claims computed, ███████████████████ no special difficulties of managing Class members' claims as a class action present themselves. Other efficiencies, such as the efficiencies afforded by combined discovery, have already been achieved and will continue.

## VI.     CLASS COUNSEL

The factors enumerated in Rule 23(g)(1) weigh in favor of approving Keller Rohrback L.L.P. as Lead Class Counsel and the Thrash Law Firm, P.A. as Class Counsel. First, counsel did significant work to identify and investigate potential claims in this action.[11] Fed. R. Civ. P. 23(g)(1)(A)(i). Second, counsel have extensive experience handling class actions generally, and complex ERISA litigation specifically, and are willing and able to commit the necessary resources to achieving a successful outcome in this case.[12] *Id.* at 23(g)(1)(A)(ii)-(iv). Counsel have already done substantial work in this case, including successfully resisting Defendants' motions to dismiss, engaging in document discovery, and taking and defending numerous depositions.[13] *Id.* at 23(g)(B) (court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class"). Thus, Plaintiffs' counsel will adequately represent the Class.

## VII.     CONCLUSION

Plaintiffs respectfully request that the Court certify the class defined above under Rule 23(a) and Rule 23(b)(1), or, in the alternative, Rule 23(b)(3). Plaintiffs further request that the court appoint Lead Class Counsel and Class Counsel pursuant to Rule 23(g).

---

[11] *See* Gotto Decl. at ¶¶ 6, 9; Declaration of Thomas P. Thrash in Support of Plaintiffs' Motion for Class Certification ("Thrash Decl.") at ¶ 4.

[12] *See* Gotto Decl. at ¶¶ 4-8, Att. 1; Thrash Decl. at ¶ 2-3, 6-7.

[13] *See* Gotto Decl. at ¶ 9.

DATE: June 16, 2025                    Respectfully submitted,

                                       */s/ Gary Gotto*
                                       _____
                                       Gary Gotto (admitted *pro hac vice*)
                                       KELLER ROHRBACK, L.L.P.
                                       3101 N. Central Avenue, Suite 1400
                                       Phoenix, AZ 85012-2643
                                       (602) 230-6322 / fax (602) 248-2822
                                       E-mail: ggotto@kellerrorhback.com

                                       Matthew Gerend (admitted *pro hac vice*)
                                       Eric Lombardo (admitted *pro hac vice*)
                                       KELLER ROHRBACK, L.L.P.
                                       1201 Third Avenue, Suite 3400
                                       Seattle, WA 98101-3276
                                       (206) 623-1900 / fax (206) 623-3384
                                       E-mail: mgerend@kellerrohrback.com
                                       E-mail: elombardo@kellerrohrback.com

                                       Thomas P. Thrash (Ark. Bar No. 80147)
                                       William T. Crowder (Ark. Bar No. 2003138)
                                       THRASH LAW FIRM, P.A.
                                       1101 Garland Street
                                       Little Rock, AR 72201-1214
                                       (501) 374-1058 / fax (501) 374-2222
                                       E-mail: tomthrash@thrashlawfirmpa.com
                                       E-mail: willcrowder@thrashlawfirmpa.com

                                       ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 16th day of June 2025, the foregoing was sent via CM/ECF to the following:

**Counsel for Defendants James A. Sliker; Chad Ware; Matthew K. Stites; Thomas J. Ferree; Tina Chang; Matt Kramer; Central States Manufacturing, Inc.; and Central States Manufacturing, Inc. Board of Directors:**
Mark A. Nebrig
Joseph M. Piligian
MOORE & VAN ALLEN PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28205
(704) 331-3602 / fax (704) 39-5974
E-mail: marknebrig@mvalaw.com
E-mail: joepiligan@mvalaw.com

Nathan A. Read (Ark. Bar No. 2012137)
Devin R. Bates (Ark. Bar No. 2016184)
MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, AR 72758
(479) 464-5663 / fax (479) 464-5680
E-mail: nread@mwlaw.com
E-mail: dbates@mwlaw.com

**Counsel for Defendant GreatBanc Trust Company:**
Lars C. Golumbic
Andrew D. Salek-Raham
Larry M. Blocho, Jr.
Caroline Wood
GROOM LAW GROUP
1701 Pennsylvania Ave. NW, Ste. 1200
Washington, D.C. 20006
(202) 861-6615 / fax (202) 659-4503
E-mail: lgolumbic@groom.com
E-mail: asalek-raham@groom.com
E-mail: lblocho@groom.com
E-mail: cwood@groom.com

*/s/ Brooke A. Nelson*
Brooke A. Nelson, Legal Assistant